UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| DORIS CRAWFORD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:17-CV-309-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| EASTERN KENTUCKY UNIVERSITY, | ) | **ORDER GRANTING SUMMARY** |
| | ) | **JUDGMENT** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

## I.   Procedural History

This matter is before the Court on defendant's Motion for Summary Judgment. [R. 18]

On July 5, 2017 Plaintiff Doris Crawford brought suit in Madison County Circuit Court for

claims of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964

and the Kentucky Civil Rights Act ("KCRA"). [R. 1-2, Compl. at ¶¶ 13-20]  On July 24, 2017

Defendant Eastern Kentucky University ("EKU") filed a notice of removal from Madison Circuit

Court. [R. 1, Notice of Removal]  Defendant EKU moved for summary judgment on June 11,

2018. [R. 18]  Plaintiff filed her response in opposition to defendant's motion on July 19, 2018

[R. 26] and defendant filed its reply on August 1, 2018. [R. 29]  Because plaintiff has failed to

show that defendant's legitimate nondiscriminatory reason for her termination was pretext for

unlawful discrimination, defendant's motion for summary judgment is granted on both counts.

## II.   Factual Background

The Model Laboratory School ("Model") is a preschool through twelfth grade school

operated under the umbrella of the EKU College of Education. [R. 18-1, Defendant's

Memorandum in Support of Motion for Summary Judgment ("Def.'s Memo in Support"), at p. 3,

- 1 -

Page ID #: 80]  In early 2014 EKU began considering the possibility of reorganizing Model in order to achieve a more efficient organizational structure with an eye to transforming Model into a University Teaching School akin to a medical school's teaching hospital. [R. 18-3, E-mail from Janna Vice]

In November of 2014 two fateful things occurred.  First, EKU appointed Dr. Ann Burns, an assistant professor in the College of Education, to be Interim Director of Model in order to oversee the reorganization as well as to investigate which systems throughout the school could be improved. [R. 18-18, Burns Dep., at pp. 2-3, 16:8-18:14]  Burns was appointed to the position as she had been "acknowledged by the State of Kentucky as a school turnaround specialist." [R. 18-20, Vice Dep. at p. 5, 33:1-20]  Second, believing the position to be necessary, EKU posted a job listing for a Response to Intervention ("RTI") Coordinator at Model. *Id.* at p. 8, 48:6-9. Following a short search Plaintiff Doris Crawford was appointed RTI Coordinator at Model beginning on February 2, 2015. [R. 18-7, Terms of Faculty Appointment]

From the outset plaintiff's time at Model did not go smoothly, a fact that plaintiff attributes to discrimination by her colleagues and superiors. [R. 26-3, Crawford Dep., at p. 9, 46:20]  Plaintiff alleges that this discrimination manifested itself in various fashions, including: that she was given neither an office nor supplies, that she had to teach classes outside of the scope of her employment, that her position was not given a stipend, that she was not given a job description when she started, that her salary did not match what was advertised, that she was treated differently with regards to disciplinary matters, and that her colleagues and superiors treated her negatively including comments about her race. [R. 18-16, OEI Investigative Report, at pp. 35-44, Page ID #: 203-212]

While plaintiff did not make a formal complaint for discrimination following EKU's official procedure until December 17, 2015 [R. 18-1, Def.'s Memo in Support, at p. 13, Page ID #: 90], she made various informal complaints to members of the University throughout 2015. In June of 2015 plaintiff emailed Dr. Burns complaining about her lack of a stipend. [R. 18-10, June 2015 E-mail] After investigation, the University found that despite plaintiff's claims other districts did not offer a stipend for the RTI Coordinator position. *Id.* While plaintiff's emails from this inquiry did not contain any mention of racial discrimination she claims that she complained that the lack of a stipend was an element of racial discrimination in follow up verbal conversations with Dr. Burns [R. 26-3, Crawford Dep., at p. 25, 137-:15], a claim Dr. Burns refutes [R. 18-18, Burns Dep. at p. 7, 37:11] Next, in August or September of 2015 plaintiff followed up on her complaints to Dr. Burns by meeting with defendant's General Counsel Dr. Laurie Carter to complain about what she viewed as disparate treatment. [R. 26, Plaintiff's Memorandum in Response ("Pl.'s Response"), at p. 5, Page ID #: 285] Finally, in October of 2015 plaintiff met with Josyln Glover, Director of the Office of Equity and Inclusion ("OEI"), to complain about what she viewed as the unfair treatment she was facing at EKU. [R. 26-3, Crawford Dep., at p. 28, 151:2] Following this meeting Josyln Glover advised plaintiff to file a formal complaint. *Id.* at 29, 153:10-12. Plaintiff filed her official complaint with OEI on December 17, 2015 [R. 18-1, Def's Memo in Support, at p. 13, Page ID #: 90], and after an investigation OEI concluded on May 16, 2016 that plaintiff had not faced improper discrimination. [R. 18-16, OEI Investigative Report]

On December 18, 2015, the day following Crawford's OEI complaint, defendant announced its plans to restructure the administration of Model to the entire faculty, importantly noting that the changes had been approved the day before. [R. 18-12, December 2015 E-mail]

This e-mail noted the high level changes that would restructure the school's administration to be run by a new Executive Director, a co-director for elementary, and a co-director for the middle and high schools. *Id.* In order to achieve this restructuring, Model eliminated three positions: Director, Associate Director, and RTI Coordinator. [R. 18-1, Def.'s Memo in Support, at p. 12, Page ID #: 89] Prior to the reorganization these positions were held, respectively, by Dr. James Dantic [R. 18-18, Burns Dep. at p. 2, 16:7], Laura Dedic, and Plaintiff Crawford. [R. 18-1, Def.'s Memo in Support, at p. 12, Page ID #: 89] This new structure would decrease the administrative burden on the director running Model, who was previously required to oversee three separate schools covering "54 faculty members, 26 staff and 730 students, covering 14 grade levels." *Id.* Under the new administrative structure the newly created Executive Director position would be able to focus on serving as a liaison between the College of Education and the University, while the newly created co-directors would be able to lend a greater focus to the schools they oversaw. *Id.* at p. 11.

In order to fill these new positions EKU not only set up three separate search committees but also established a site-based council pursuant to Kentucky law to oversee the hiring process. *Id.* at 13, Page ID #: 90. While at least two candidates were interviewed for each position, and despite encouragement by defendant for plaintiff to apply to any of the newly created positions [R. 26-3, Crawford Dep., at p. 9, 40:5-8], plaintiff declined to apply to any of them. Following this search, EKU hired Eric Parker, an African American, to be the new Executive Director and Laura Dedic to be the new Director of Secondary Education. [R. 18-1, Def.'s Memo in Support, at p. 13, Page ID #: 90]

With her former position eliminated, plaintiff was formally notified on February 23, 2016 that her contract would not be renewed past May of that year. [R. 26, Pl.'s Response, at p. 6,

Page ID #: 286]  On July 5, 2017 plaintiff brought suit in Madison County Circuit Court for claims of race discrimination and retaliation. [R. 1-2, Compl.]

### III.    Legal Analysis

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When determining a motion for summary judgment a court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates,* 578 F.3d 407, 414 (6th Cir. 2009).  The court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 265 (1986).  When, as here, the defendant moves for summary judgment "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.  The initial burden of establishing no genuine dispute of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986).  If the moving party satisfies this burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *Id.*

### A.  Count I: Race Discrimination

Plaintiff claims that she was fired due to her race in violation of Title VII and KRS 344.040. [R. 1-2, Compl. ¶¶ 15, 19]  Because courts generally interpret Title VII "consonant[ly]" with the KCRA the claims are analyzed together. *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 434 (6th Cir. 2009).

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). In disparate treatment cases the adverse employment action must be motivated at least in part by the plaintiff's protected-group status, as "[a]bsent a discriminatory basis, an employer does not violate Title VII, even though the discharge may have been arbitrary, unfair, or for no reason at all." *Lewis-Smith v. Western Kentucky University*, 85 F.Supp.3d 885 (W.D. Ky. 2015) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514, 113 S. Ct. 2742, 125 L.Ed.2d 407 (1993)).

Where there is no direct evidence of discrimination, in order to sustain a claim of disparate treatment under Title VII the plaintiff carries the burden of first establishing a *prima facie* case of discrimination by showing (1) that she is a member of a protected class; (2) she was qualified for the job and performed it satisfactorily; (3) despite her qualifications and performance, she suffered an adverse employment action; and (4) she was replaced by a person outside the protected class or treated less favorably than a similarly situated individual outside of her protected class. *See, e.g., Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014). The fourth prong is modified in cases of reorganization or reduction in force, and instead the plaintiff must show "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). This evidence must be "sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff" because of her race. *Id.* at 1466. Once the plaintiff has made a *prima facie* case the burden then

shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the adverse action. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). If the defendant states such a reason, the plaintiff then has the burden of showing that the defendant's articulated reason is nothing more than a pretext to hide improper discrimination. *Tingle v. Arbors at Hilliard*, 692 F.3d 523 (6th Cir. 2012). Both parties concede that the first two elements of the *prima facie* case are met. [R. 26, Pl.'s Response, at p. 10, Page ID #: 290]

### a) Adverse Employment Action

An adverse employment action is defined as an employment action which "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). As stated in her complaint and confirmed in her response to defendant's motion for summary judgment, plaintiff claims that she was discriminated against when defendant terminated her position without providing for replacement employment. [R. 26, Pl.'s Response, at p. 1-2, Page ID #: 281-82] The Court therefore finds that because plaintiff's claims stem from her termination, she has stated an adverse employment action.

### b) Similarly Situated Individual

Because this claim arises from Model's reorganization the fourth prong is modified and the plaintiff must show "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes,* 896 F.2d at 1465. While the parties do not formally argue in line with the modified fourth prong, defendant's motion nevertheless asserts that plaintiff was not singled out for

discharge for impermissible reasons.  Plaintiff attempts to show her mistreatment with comparison to three employees, each of which is discussed below.

### i.    Ann Burns

Crawford claims that she was similarly situated to Caucasian Dr. Ann Burns because they were both administrators who lost their positions during the reorganization. [R. 26, Pl.'s Response, at pp.14-15, Page ID #: 294-95]  Crawford claims that she was mistreated as compared to Burns because while Crawford was asked to apply to any of the newly created positions, Burns was given the position as Executive Director without having to apply. *Id.*

The Court does not find Dr. Burns to be a similarly situated employee to plaintiff.  While wary of the fact that the Court's analysis must be context dependent and not require "similarity in all respects," plaintiff's position was too unlike Dr. Burns' to be a comparator. *Jackson v. FedEx Corp. Servs., Inc.*, 518 F.3d 388, 396 (6th Cir. 2008).  The Court considers two individuals to be similarly situated if they are similar in all relevant respects, with the court making an individualized determination as to which factors are relevant based on the factual context of the case. *Lynch v. ITT Educ. Servs., Inc.*, 571 F. App'x 440, 444 (6th Cir. 2014). While plaintiff was hired to work at Model, Dr. Burns was "on loan" to Model in the position of an Interim Director and the very nature of an "interim" position necessarily entails a return to one's former job. [R. 18-18, Burns Dep., at pp. 2, 16:3-4]  Dr. Burns' return to her former position was always part of defendant's plan for reorganization, one which pre-dated plaintiff's hiring. *Id.*  Plaintiff tries to make much of the fact that in an email Dr. Burns stated that she had been asked to fill the Executive Director position [R. 26, Pl.'s Response, at p. 15, Page ID #: 295], yet in this very email Dr. Burns signs as the "Interim Director" of Model. [R. 18-12, December 2015 E-mail]  Further confirming Dr. Burns' interim nature was her return to her

former position following the hire of an Executive Director for Model. [18-1, Def.'s Memo in Support, at p. 23, Page ID #: 23] This occurred after Eric Parker was hired for the position in the summer of 2016 following a formal search, unlike Burns who simply continued in that position as an Interim Director under her permanent replacement was found. [R. 18-20, Vice Depo., at p. 8, 47:10-11] Moreover, not only did Burns and Crawford occupy entirely different spaces in the hierarchy of EKU, but they also had different job requirements. While the RTI position had specific teaching and administrative duties Dr. Burns was made Interim Director for the entirely different purpose of overseeing the administrative reorganization of the school.

Ultimately, the Court does not see how an Interim Director returning to her position is similar to a newly hired employee losing her job, and therefore does not find that Burns and Crawford were similarly situated. The plaintiff was fired after her position was eliminated; Dr. Burns finished an interim position.

### ii.    Laura Dedic

Next, plaintiff argues that she is comparable to Laura Dedic, another Caucasian administrator who held the position of Assistant Director at Model before the reorganization and was hired as the Secondary Director afterwards. [R. 26, Pl.'s Response, at p. 16, Page ID #: 296] Again plaintiff claims that she was treated less favorably than her comparator because a Caucasian employee was given a job after the reorganization while she was not.

Even assuming that Dedic was a similarly situated employee the Court does not find that she was treated more favorably. Both individuals' positions were terminated and both individuals were encouraged to apply for any of the newly created administrator positions, yet only Dedic did. [R. 26-3, Crawford Dep., at p. 9, 40:5-8] Plaintiff claims that while Dedic was handed a similar position post reorganization to that which she had before the reorganization, a

comparable position was not created for the plaintiff. [R. 26, Pl.'s Response, at pp. 16-17, Page ID #: 296-97] Yet the record does not reflect this: Dedic's position was terminated, a new position was created, and after she and at least one other candidate applied for the position, Dedic was hired. [R. 18-20, Vice Depo., at p. 6, 37:1-22] Furthermore, while plaintiff alleges that Dedic's new position had a great deal of overlap with her prior job, the record reflects that the new position of Secondary Director had new responsibilities focused solely on running the middle school and would be more akin to a principal than an assistant superintendent, as had been the case prior to the reorganization. [R. 18-20, Vice Depo., at p. 5, 34:19-36:17] Ultimately, plaintiff had every opportunity to apply for any new position that was created, yet decided not to. Even assuming plaintiff had a similar position to Dedic, she was not treated any differently. Both individuals lost their old position and were invited to apply to the newly created positions.

### iii.    Sarah Shaffer

Finally, Crawford argues that she was treated worse than similarly situated Gifted and Talented Coordinator Sarah Shaffer. [R. 26, Pl.'s Response, at p. 14, Page ID #: 294]. Crawford's claim for disparate treatment in regards to Shaffer focuses on two elements, as Crawford alleges that Shaffer was both provided resources that Crawford never received, such as school supplies and a nice office, and second that Shaffer was allowed to teach classes that fell within her specialty while Crawford was forced to teach classes outside of those she agreed to upon her hire. *Id*. Plaintiff argues that despite both working as coordinators, Shaffer was given special treatment because she is Caucasian.

In support of her allegations plaintiff can only rely on her own statements that Shaffer was given both a favorable teaching load and favorable classes. *Id*. These claims are refuted by

Burns' testimony [R. 18-18, Burns Dep., at p. 10, 50:14-51:5] as well as the internal investigative report conducted by EKU's OEI. [R. 18-16, OEI Investigative Report]  Defendant's own investigation that it did not commit racial discrimination is obviously not conclusive; however, it lends credence to the belief that the plaintiff did not face a race-based disparity in resources and assignments.  While the Court is mindful that it must not weigh the evidence at the summary judgment stage, it notes the initial weakness of plaintiff's *prima facie* case of discrimination.  The Sixth Circuit has found a plaintiff's own limited testimony insufficient to overcome an employer's proffered legitimate, non-discriminatory reason at the pretext stage of the *McDonnell-Douglas* analysis.  *Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 503-04 (6th Cir. 2007).  The same analysis applies here.  Furthermore, even assuming that Crawford's own, weak testimony were enough to make out a *prima facie* case of impermissible racial discrimination, it is not enough to lead to the inference that EKU's legitimate, non-discriminatory reason was a false pretext.

### c) Pretext

On the above facts the Court does not believe that the plaintiff has shown a *prima facie* case of racial discrimination.  However, her larger problem is with her inability to show pretext.  Assuming, without so deciding, that plaintiff was able to establish a *prima facie* case of discrimination, this would then shift the burden of production to the defendant to articulate a legitimate nondiscriminatory reason for her termination. *Leadbetter v. Gilley*, 385 F.3d 683 (6th Cir. 2004).  To show pretext at summary judgment the plaintiff "is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that they were insufficient to motivate the discharge." *Carter v. Toyota Tsusho America, Inc.*, 529 F. App'x 601, 610 (6th

Cir. 2013) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). The Sixth Circuit has "acknowledged the criticism that has been leveled at the practice of segmenting the pretext inquiry into those three categories" and rather simply views them as "a convenient way of marshaling evidence and focusing it on the ultimate inquiry: did the employer fire the employee for the stated reason or not?" *Tingle v. Arbors at Hillard*, 692 F.3d 523, 530 (6th Cir. 2012).

An employer is entitled to summary judgment when they "reasonably and honestly rel[y] on particularized facts in making an employment decision … even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009) (quoting *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 713-15 (6th Cir. 2007)). The "key inquiry … is 'whether the employer made a reasonably informed and considered decision before taking' the complained-of action." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598-99 (6th Cir. 2007) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)). The employer must point to particularized facts upon which it reasonably relied but it is not required that "the decisional process used by the employer be optimal or that it left no stone unturned." *Smith,* 155 F.3d at 807.

In its motion for summary judgment defendant provides the following reason for the elimination of plaintiff's position: "(1) prior to Crawford's hire, in 2014, EKU sought to reorganize Model to create a more efficient administrative structure; (2) Burns worked on the project for nearly a year; (3) EKU had legitimate business concerns for restructuring Model; and (4) the RTI position was the only flexible position in the organization and budget." [R. 18-1, Def.'s Memo in Support, at p. 24, Page ID #: 101] In order to survive summary judgment, plaintiff must produce enough evidence to rebut defendant's claim that their proffered reason,

and not her race, was the motivation for her termination. *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 532 (6th Cir. 2007) ("to survive summary judgment a plaintiff need only produce enough evidence to support a *prima facie* case and to rebut, but not to disprove, the defendant's proffered rationale.").

In her response plaintiff argues both that the decision to reorganize Model had no basis in fact, and second that the proffered reason was insufficient to motivate EKU's decision. [R. 26, Pl.'s Response, at pp. 17-18, Page ID #: 297-98]  While plaintiff mentions all three prongs in her response, only the first and third are developed in a meaningful fashion.  To defeat summary judgment the "plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant[] … did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001).  Put another way, the plaintiff must "produce sufficient evidence from which the fact finder could reasonably infer that the asserted unlawful discrimination or retaliation was the real reason." *Bailey v. Oakwood Healthcare, Inc.*, 732 F. App'x 360, 363 (6th Cir. 2018) (citing *Seeger*, 681 F.3d at 285).  One such way to rebut the defendant's legitimate nondiscriminatory reason for their employment decision, one plaintiff attempts to employ in this case, is to show that the error by the employer was "too obvious to be unintentional." *Smith*, 155 F.3d at 807.

The "no basis in fact" prong requires a plaintiff to show "evidence that the reasons given by the employer simply did not happen." *Alberty v. Columbus Township*, 730 F. App'x 352, 362 (6th Cir. 2018) (citing *Gray v. Toshiba America Consumer Prods., Inc.,* 263 F.3d 595, 600 (6th Cir. 2001)).  As an initial matter of fact it is undisputed that a reorganization did occur: EKU eliminated and replaced three administrative positions in order to better streamline the structure

of the school.  Rather, plaintiff claims that the stated reason has no basis in fact, arguing that it would make no sense for the defendant to take time creating a position that it would eliminate shortly thereafter. [R. 26, Pl.'s Response, at pp. 17-18, Page ID #: 297-98]  While this decision may seem counter productive, simply claiming that the defendant's actions were illogical without pointing to facts establishing they were pretextual is insufficient. *Smith,* 155 F.3d at 807. Plaintiff argues that because the decision to fire her was made after she was hired, not before, the reorganization had no basis in fact. [R. 26, Pl.'s Response, at p. 18, Page ID #: 298]  Yet this claim simply reinforces defendant's legitimate nondiscriminatory reason for her termination, namely that after mistakenly determining that an RTI Coordinator was necessary defendant then viewed plaintiff's position as expendable in the subsequent reorganization process. [R. 18-20, Vice Depo., at p. 8, 48:6-7]  Plaintiff fails to cite to any evidence to support her claim that the defendant never considered the RTI position necessary, and therefore fails to show that the stated reason has "no basis in fact."  Plaintiff cannot create a genuine issue of material fact through bare assertions that the reason offered by the employer has no basis in fact, *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (quoting *Joostberns v. United Parcel Servs., Inc.*, 166 Fed. App'x 783, 791 (6th Cir. 2006)), which she attempts to do by simply claiming that the defendant's decisions were too illogical to be genuine.

Plaintiff's second argument, that the proffered reason was insufficient to motivate defendant's actions, also fails.  Under this prong the plaintiff "attempts to indict the credibility of the employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant." *Alberty*, 730 F. App'x at 362, (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds by *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 129 S.Ct. 2343

(2009)). Plaintiff first claims that defendant "created positions that were substantially similar to the positions Ann Burns and Laura Dedic had prior to the reorganization." [R. 26, Pl.'s Response, at p. 18, Page ID #: 298] Plaintiff argues that if the school were really reorganizing and not just creating a ruse to terminate her they would have created substantially different duties for the new positions. *Id*. Again, unsupported allegations that the defendant could or should have done something in the way the plaintiff alleges would be more logical fail to establish pretext. *Smith,* 155 F.3d at 807. Defendant determined that it needed to reorganize the executive structure of the school, articulated what problems it faced and how the new positions helped solve them, and has offered evidence that plaintiff's position was the most logical one to cut in that process. [R. 18-20, Vice Depo., at p. 7, 44:6-7] Plaintiff's raw assertion that these new positions, per her own judgment, were not different enough does not show that their creation was pretext for discrimination.

Further, the evidence in the record contradicts plaintiff's assertions that defendant improperly found substantially similar positions for Dr. Burns and Laura Dedic. First, as discussed above, Dr. Burns was "on loan" to Model in the position of an Interim Director and as such was always going to return to her former position once the reorganization was complete. [R. 18-18, Burns Dep., at pp. 2, 16:3-4] This bare assertion fails to show that defendant's decision was pretext for unlawful discrimination. Next, even assuming Dedic's new role was substantially similar to her old one, the fact remains that she applied for the new position she ultimately received while plaintiff refused to apply for any new opening. [R. 18-1, Def.'s Memo in Support, at pp. 23-24, Page ID #:100-01] Plaintiff failed to do so despite defendant's encouragement. [R. 26-3, Crawford Dep., at p. 9, 40:5-8] The evidence does not support plaintiff's contention that positions were found or created for her Caucasian colleagues while she

was forced out of her job with no replacement position available. [R. 26, Pl.'s Response, at p. 18, Page ID #: 298]

Next, plaintiff argues that because "[o]ut of the 70 positions at Model, Crawford's position was the only position eliminated" and further that because she was "the only African American" and the "only individual who was not re-hired" the reorganization was simply pretext for her unlawful termination. *Id*. Plaintiff's assertions mischaracterize the reorganization. First, plaintiff's position was not the only one eliminated as defendant also eliminated the positions of Director and Associate Director to be replaced by an Executive Director position and two lower school directors. [R. 18-1, Def.'s Memo in Support, at p. 12, Page ID #: 89] While it is perhaps true that the RTI Coordinator position was the one position terminated with the least directly analogous replacement position created, plaintiff was encouraged to apply for any of the new positions but declined. [R. 26-3, Crawford Dep., at p. 9, 40:5-8] Next, while plaintiff tries to make much of the fact that out of the 70 positions at Model only hers was eliminated this assertion skews the nature of defendant's reorganization. While there might have been 70 total positions at Model, the reorganization was always focused on the administrative structure of the school and therefore was always going to leave the vast majority of positions unaffected. [R. 18-1, Def.'s Memo in Support, at p. 11, Page ID #: 88] Ultimately, plaintiff cannot show discrimination by simply pointing to the fact that she was the only African American to be fired. *See, e.g., Shah v. General Elec. Co.*, 816 F.2d 264 (6th Cir. 1987).

Finally, the Court finds it necessary to address the extent to which the plaintiff's claims of a discriminatory atmosphere contribute to evidence of pretext. While the argument is not fully developed by the plaintiff it is implicated enough that it bears addressing. The Sixth Circuit has held that:

> Circumstantial evidence establishing the existence of a discriminatory atmosphere at the defendant's workplace in turn may serve as circumstantial evidence of individualized discrimination directed at the plaintiff. While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add 'color' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff.

*Rachells v. Cingular Wireless Employee Services, LLC*, 732 F.3d 652, 665 (6th Cir. 2013) (citing *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 392 (6th Cir. 2009)). Evidence of a discriminatory atmosphere need not coincide directly with the events giving rise to a claim of discrimination, and can include actions by non-decisionmakers. *Risch*, 581 F.3d at 392.

At the outset it must be stated that plaintiff's evidence of a discriminatory atmosphere serves not so much to buttress her evidence of discrimination as to be her only evidence of discrimination. Throughout her response plaintiff makes conclusory claims of racial discrimination based on nothing more than her own limited testimony in her deposition. As noted above, these alone cannot sufficiently show a discriminatory atmosphere and allow the plaintiff to survive summary judgment. *Abdulnour*, 502 F.3d at 503-04. The most tangible evidence referenced by the plaintiff is an email to Dr. Burns in which she noted that a confrontation with another teacher was "just another situation here at Model of discrimination, very poor climate and culture, especially as it relates to diversity." [R. 26-14, November E-mail] While the plaintiff clearly felt discriminated against during her time at Model, her limited accusations alone in combination with her already limited evidence cannot show a discriminatory atmosphere that alone demonstrates that the defendant's proffered reason for her termination was pretextual. Plaintiff's arguments that the defendant's explanation are pretext are weak enough on their own, and cannot be saved by her limited allegations of a discriminatory atmosphere.

Despite plaintiff's claims that she faced a discriminatory atmosphere at Model there are further pieces of evidence to rebut this. First, Dr. Burns had a role both in hiring and firing the plaintiff, entitling the defendant to a "same actor" inference in which a "presumption can arise that an employee's race did not motivate the termination because the sort of person who would discriminate against a particular race would not also hire someone of that race." *Garrett v. Southwestern Med. Clinic*, 631 F. App'x 351, 357 (6th Cir. 2015). While this presumption's "import must be relatively modest," the Court believes it goes some way to shedding light on defendant's decisionmaking and helps show that it was not racially motivated. *Id*. Next, following the reorganization the defendant hired Eric Parker, an African American, to be the new Executive Director of Model. [R. 18-1, Def.'s Memo in Support, at p. 13, Page ID #: 90] Eric Parker was not plaintiff's direct replacement, however, the reorganization completely eliminated plaintiff's position and therefore she had no direct replacement. With this in mind, and noting that this fact is far from conclusive, the Court finds the fact that the reorganization led to the hire of an African American goes some way to showing that the reorganization was not a racially motivated sham. *Jackson v. Richards Med. Co.*, 961 F.2d 575, 587 (6th Cir. 1992).

Plaintiff wishes the above to show that the defendant's reorganization of Model was nothing more than a pretext to force her out while retaining jobs for her Caucasian counterparts. However, none of the above sufficiently "indicts the credibility of the employer's explanation" in such a way that the Court can find that an illegal motivation was more likely than not the cause of her termination. While defendant has provided legitimate, non-discriminatory grounds for its own reorganization and the plaintiff's termination, plaintiff can only respond with conjecture. Even taking into account plaintiff's claims of a discriminatory atmosphere, plaintiff simply fails to provide enough evidence to call into question the legitimacy of defendant's proffered reason

for her termination.  Plaintiff cannot produce evidence that the reorganization was racially motivated and so her attempts to show a discriminatory atmosphere cannot buttress claims that themselves barely stand.  As such, her claims for racial discrimination must fail.

## B.  Count II: Retaliation

Plaintiff next claims that she was retaliated against for engaging in protected activity in violation of Title VII and KRS 344.280(1). [R. 18-2]  Title VII makes it "unlawful…for an employer to discriminate against any … employe[e] … because [s]he has opposed any practice made … unlawful … by this subchapter." 42 U.S.C. § 2000e-3(a).  To establish a *prima facie* case of retaliation a plaintiff must show that "(1) [s]he engaged in activity protected by Title VII; (2) h[er] exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff, and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014) (citing *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007)).  A Title VII retaliation claim "must be proved according to traditional principles of but-for causation … [t]his requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  As with her claim for employment discrimination, once the plaintiff has established a *prima facie* case of retaliation the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employment decision.  *McDonnell Douglas*, 411 U.S. at 802.  Once the defendant has articulated such a reason the plaintiff must "demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for [retaliation]." *Alexander v. Ohio State Univ. Coll. of Soc.*

*Work*, 429 F. App'x 481, 498 (6th Cir. 2011) (quoting *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003)).

<strong>a)</strong>        <strong>Protected Activity Known to Defendant and Adverse Action</strong>

The record indicates that the first three elements for a claim of retaliation have been met. The Sixth Circuit has held that "a vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1414 (6th Cir. 1989). However, this does not "require that the plaintiff's complaint be lodged with absolute formality, clarity, or precision." *Stevens v. Saint Elizabeth Medical Center, Inc.*, 533 F. App'x 624, 631 (6th Cir. 2013). Ultimately, "[t]o come within the protection of Title VII, [Crawford] must establish that [s]he challenged an employment practice that [s]he reasonably believed was unlawful." *Yazdian v. ConMed Endoscopic Technologic, Inc.*, 793 F.3d 634, 645 (6th Cir. 2015) (citing *Johnson v. Univ. of Cincinatti*, 215 F.3d 561, 580 (6th Cir. 2000)). Plaintiff alleges in her deposition that she discussed racial discrimination informally with several members of the EKU staff, and also provided an email to Ann Burns from November 2015 indicating her belief that she was working in a discriminatory environment. [R. 26-14, November E-mail] The Court finds that a jury could conclude that plaintiff believed herself to be the subject of unlawful discrimination and made this known to her superiors, therefore constituting protected activity under Title VII. This email further shows that Ann Burns, who was in charge of the reorganization, was aware of the plaintiff's complaint. Finally, because plaintiff was fired she clearly faced an adverse employment action.

<strong>b)   Causation</strong>

Plaintiff's *prima facie* case for Title VII retaliation therefore turns on her ability to show causation. In order to "establish a causal connection, a plaintiff must proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (internal quotation omitted). Importantly, the plaintiff must show but-for causation. *Sharp v. Profitt*, 674 F. App'x 440, 450 (6th Cir. 2016). While temporal proximity between the protected activity and the adverse employment action can sometimes show causation, "[s]ubstantial case law from this circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010). This case law "can fairly be characterized as recognizing the possibility that, on a particular set of facts, extremely close temporal proximity could permit an inference of retaliatory motive, but also recognizing that often evidence in addition to temporal proximity is required to permit the inference." *Id.* at 401.

Despite the difficulty with finding causation based solely on temporal proximity, this is the only argument plaintiff relies on in her response, stating that she was fired less than a month after making her first formal complaint of racial discrimination. [R. 26 Pl.'s Response, at pp. 21-22, Page ID#: 301-02] The first problem with plaintiff's reasoning is that she fails to show "close" temporal proximity. While her first discrete claim of racial discrimination came in November of 2015 [R. 26-14, November E-mail] she claims to have complained about discrimination months before that. [R. 26-3, Crawford Dep., at p. 25, 137-:15] Plaintiff, however, was not officially terminated until February 23, 2016. [R. 26, Pl.'s Response, at p. 6, Page ID #: 286] Even assuming that plaintiff's first complaint of discrimination did not occur until November 2015, she was not terminated for several months following her complaint and the Court fails to see how this establishes "close" temporal proximity. *See, e.g., Henderson v.*

*City of Flint, Michigan*, 2018 WL 4520012 (6th Cir. Sept. 20, 2018) (noting that three days could be considered "close" temporal proximity); *Cooper v. City of N. Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986) ("[t]he mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an interference [sic] of retaliation.").  Further, even assuming the plaintiff could show close temporal proximity she fails to provide any additional evidence that could support a finding of causation. *Mickey v. Zeidler Tool and Die Co*., 516 F.3d 516, 525 (6th Cir. 2008) ("where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.").  For the reasons stated above, plaintiff's additional fact that she was the only African American terminated in this reorganization fails to sufficiently buttress her evidence of temporal proximity.

### c)  Pretext

Like her claim for discrimination, plaintiff must "demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for [retaliation]." *Alexander v. Ohio State Univ. Coll. of Soc. Work*, 429 F. App'x 481, 498 (6th Cir. 2011) (quoting *Abbott v. Crown Motor Co., Inc.*, 348 F. 3d 537, 542 (6th Cir. 2003)).  Even if plaintiff were able to make a *prima facie* case for retaliation, she has failed to show that the reorganization was merely pretext used to cover up an unlawful retaliation.  Plaintiff's bare claim that she was fired some time after complaining of disparate treatment does not sufficiently call into question the defendant's reorganization, which was put in motion before she was hired and certainly before she ever complained of racial discrimination.  Therefore, plaintiff cannot show that the reorganization was merely pretext.

### IV.   Conclusion

For the foregoing reasons the Court grants defendant's motion for summary judgment on both of plaintiff's claims.  Accordingly, and the Court being otherwise sufficiently advised;

**IT IS HEREBY ORDERED** as follows:

1. The Motion for Summary Judgment [**R. 18**] is **GRANTED**.

2. The defendant's Motion in Limine [**R. 17**] is **DENIED AS MOOT**.

3. A separate Judgment will be entered consistent with this Order.

This the 20th day of February, 2019.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY